**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

PAULA RENEE BRADLEY,

                Plaintiff,

                                    Case No. 3:15-cv-143-J-JRK

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
_____/

## **OPINION AND ORDER** [1]

### **I. Status**

Paula Renee Bradley ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is a result of '[d]epression," "[a]nxiety," "cognitive disorder," "stress," and "[b]ack [p]roblem[s]." Transcript of Administrative Proceedings (Doc. No. 12; "Tr." or "administrative transcript"), filed April 16, 2015, at 161 (emphasis omitted). On November 17, 2011, Plaintiff protectively filed an application for DIB, alleging an onset disability date of December 16, 2010. Tr. at 119-21. Plaintiff's "protective filing date" is listed elsewhere in the administrative transcript as November 8, 2011. Tr. at 12, 65, 66, 149. Plaintiff's application was denied initially, see Tr. at 56-65, 67-72, and upon reconsideration, see Tr. at 66, 76-81.

On May 31, 2013, an Administrative Law Judge ("ALJ") held a hearing during which the ALJ heard testimony from Plaintiff, who was represented by an attorney, and a vocational

---

[1]      The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 11), filed April 16, 2015; Reference Order (Doc. No. 14), entered April 21, 2015.

expert ("VE"). Tr. at 28-55. On June 28, 2013, the ALJ issued a Decision finding Plaintiff not disabled and denying Plaintiff's claims. Tr. at 12-21. Plaintiff then requested review by the Appeals Council, Tr. at 7-8, and submitted evidence to the Council in the form of a brief authored by her attorney, Tr. at 5; see Tr. at 226-27 (brief). On December 19, 2014, the Appeals Council denied Plaintiff's request for review, Tr. at 1-5, thereby making the ALJ's Decision the final decision of the Commissioner. On February 6, 2015, Plaintiff commenced this action under 42 U.S.C. § 405(g), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff makes two arguments on appeal. First, she alleges that "[t]he ALJ erred by failing to make any findings regarding [her] well-documented cognitive disorder." Plaintiff's Memorandum - Social Security (Doc. No. 16; "Pl.'s Mem."), filed June 16, 2015, at 3. In that regard, Plaintiff claims that "[i]n particular, the ALJ failed to determine whether the condition was 'medically determinable,' whether it was a 'severe impairment,' and whether it caused any work-related limitations." Id. at 3-12. In her second argument, Plaintiff claims that "[t]he ALJ . . . erred by finding Plaintiff's mood disorders were not 'severe' and/or resulted in no work-related limitations whatsoever." Id. at 3, 14-23. On August 17, 2015, Defendant responded by filing a Memorandum in Support of the Commissioner's Decision (Doc. No. 17; "Def.'s Mem.").

After a thorough review of the entire record and consideration of the parties' respective filings, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for further administrative proceedings for the reasons discussed below.

## **II.  The ALJ's Decision**

When determining whether an individual is disabled,[2] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ proceeded through step four of the five-step inquiry, where his inquiry ended based on his step four finding.  See Tr. at 14-21.  At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since December 16, 2010, the alleged onset date."[3] Tr. at 14 (emphasis and citations omitted).  At step two, the ALJ found Plaintiff "has the following severe impairments: obesity, degenerative disc disease, and degenerative joint disease." Tr. at 14 (emphasis and citations omitted).  At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix

---

[2] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[3] The ALJ noted that Plaintiff's "certified earnings record show[ed] earnings totaling $17,035.25 in 2011 and $1,159.16 in 2012[, but] . . . at the hearing, [Plaintiff] testified that the wages represented short-term and long-term disability payments." Tr. at 14 (citation omitted).

-3-

1." Tr. at 17 (emphasis and citations omitted).  The ALJ determined Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 CFR [§] 404.1567(b) except [Plaintiff] can frequently balance; occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; and never climb ladders, ropes, and scaffolds. [Plaintiff] must avoid concentrated exposure to fumes, odors, dusts, and gases, and avoid moderate exposure to hazards (such as machinery and unprotected heights/parts).

Tr. at 17 (emphasis omitted).  At step four, the ALJ, with the assistance of the VE, found Plaintiff "is capable of performing past relevant work as a[n] Accounts Payable Clerk. . . as actually and generally performed"  Tr. at 21 (emphasis omitted).  The ALJ found "[t]his work does not require the performance of work-related activities precluded by [Plaintiff's RFC]." Tr. at 21 (emphasis and citation omitted).  Because the ALJ found Plaintiff capable of performing her past relevant work, the ALJ was not required to and did not proceed to step five.  Accordingly, the ALJ concluded that Plaintiff "has not been under a disability . . . from December 16, 2010, through the date of th[e D]ecision." Tr. at 21 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff first challenges the ALJ's failure to acknowledge work-related limitations associated with her cognitive disorder at any step of the sequential evaluation process. Pl.'s Mem. at 4-14. In her second argument, she contends the ALJ failed to find her mood disorder to be "severe" or that it resulted in work-related limitations, and on this point, specifically argues that the ALJ erred in his handling of the opinion of Padeep Arora, M.D., her treating psychiatrist. Pl.'s Mem. at 14-23. The undersigned addresses Plaintiff's second argument first and concludes the ALJ committed reversible error, necessitating remand, in discounting Dr. Arora's opinion. Given this conclusion, and given that reconsideration of the evidence in light of the Court's overall findings is likely to impact Plaintiff's first argument as well, it is unnecessary to substantively address Plaintiff's first argument. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding

that certain arguments need not be addressed when the case would be remanded on other issues).  A discussion follows.

**A.    Dr. Arora's Opinion**

Plaintiff has been under the regular care of psychiatrist, Dr. Arora, and the therapists at Arora Psychiatric since June 2010.  She was first seen June 25, 2010, in follow up from her hospitalization at Riverpoint.[4]  Tr. at 358.  She has treated with Arora Psychiatric on average once per month, and her concentration difficulties are documented throughout her treatment there.  See Tr. at 328-330,332, 334, 336, 338, 340, 342, 344, 346, 348, 349, 350, 352, 354, 356, 432, 434.

On February 20, 2012, Dr. Arora completed a questionnaire regarding Plaintiff's mental status at the request of the Social Security Administration.  Tr. at 441-43.  Dr. Arora noted "slowed" thought process and decrease in concentration.  Tr. at 442.  He opined that she was unable to work but could maintain activities of daily living.  Tr. at 443.  He diagnosed "major depressive disorder] mod[erate]-severe, . . .[d]ysthymia, [generalized anxiety disorder], cognitive disorder NOS," and the prognosis was noted as "limited."  Tr. at 442.  Dr. Arora identified "[h]ospital admission, out [patient] visits, [and] records from Brooks Rehab"[5] as the data upon which he based his diagnosis.  Tr. at 443.

---

[4] Plaintiff was hospitalized at Riverpoint Behavior Health in June 2010 following a "meltdown" at work. Tr. at 234. A psychiatric evaluation performed that date revealed a provisional diagnosis of major depressive disorder and generalized anxiety disorder.  Tr. at 235.  She was discharged July 30, 2010.  Tr. at 232.

[5] Plaintiff treated at Brooks Rehabilitation for speech therapy evaluation beginning in June 2011. Tr. at 265. On that date, she presented with complaints of "difficulty with memory and reasoning." Tr. at 265. It was noted that her "[m]emory and cognition [were] moderately impaired." Tr. at 265. Clinical assessment revealed a "Cognitive-Linguistic disorder." Tr. at 266.

-6-

-7-

**B.    Applicable Law**

The Regulations establish a "hierarchy" among medical opinions[6] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."  20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[7] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by

---

[6]    "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

[7]    A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition.  See 20 C.F.R. § 404.1502.

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id.  When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence). An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20

C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440. "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

**C.   Analysis**

In discussing Dr. Arora's opinions, the ALJ stated as follows:

As for the opinion evidence, Dr. Aurora, [Plaintiff's] psychiatrist, indicated that [Plaintiff] is incapable of sustaining work activity for 8 hours a day, five days per week. However, determinations of disability are not within the competence of physicians whose conceptions of what constitutes disability are highly varied and generally do not coincide with the statutes, regulations, and rulings which govern decisions as to disability by the Social Security Administration. There is an additional concern that the doctor relied too heavily on [Plaintiff's] subjective report of her symptoms and limitations, uncritically accepting as true most, if not all, of what [Plaintiff] reported. However, the medical evidence of record does not contain the type of significant clinical abnormalities one would expect if [Plaintiff] were in fact disabled. What is more, [Plaintiff] has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. In addition, two reports by Dr. Aurora appear to contain inconsistencies (Exhibit 12F and 18F/1-2), and the doctor's opinion is accordingly rendered less persuasive. For example, in Exhibit 12F Dr. Aurora opined that [Plaintiff] is incapable of work activity; however, in Exhibit 18F the doctor indicated that [Plaintiff] has only moderate limitations in activities of daily living; social functioning; and concentration, persistence, and pace. For the aforementioned reasons, the undersigned has accorded little weight to the doctor's opinion.

Tr. at 20 (some citations omitted).

If an ALJ concludes the medical opinion of a treating psychiatrist should be given less than substantial or considerable weight, the ALJ must clearly articulate reasons showing

-9-

"good cause" for discounting it. Lewis, 125 F.3d at 1440. Here, the ALJ cited to four reasons for attributing "little weight" to Dr. Arora's opinions. The ALJ's reasons for discounting Dr. Arora's opinion are not supported by substantial evidence.

First, the ALJ found that Dr. Arora "relied too heavily on [Plaintiff's] subjective report of her symptoms and limitations, uncritically accepting as true most, if not all, of what [Plaintiff] reported." Tr. at 20. However, as noted above, a review of Dr. Arora stated that the data used in formulating his diagnosis included "[h]ospital admission, out [patient] visits, [and] records from Brooks Rehab." Tr. at 443. Thus, it appears Dr. Arora did rely upon sources other than Plaintiff's subjective complaints in reaching his diagnosis of cognitive disorder.

Second, the ALJ stated as a basis for discounting Dr. Arora's opinions, that the "medical evidence of record [did] not contain the type of significant clinical abnormalities one would expect if [Plaintiff] were in fact disabled." Tr. at 20. At this point in the Decision, the ALJ did not cite to any medical evidence to support this statement. Earlier in the Decision at step two, however, the ALJ discussed a neuropsychological examination that indicated Plaintiff "has a mild cognitive disorder that is characterized by cognitive slowing and decreased executive functioning." Tr. at 16 (citation omitted). Additionally, the ALJ noted the MRI of Plaintiff's brain in June 2010 "showed suspect underlying changes of chronic ischemic white matter disease." Tr. at 16 (citation omitted). These objective findings appear to directly relate to and support Dr. Arora's diagnosis of cognitive disorder and Plaintiff's complaints of difficulties with concentration and memory.

The ALJ cited to Plaintiff's activities of daily living as the third reason for discounting this treating physician's opinion. Tr. at 20. At step two, the ALJ discussed Plaintiff's

activities of daily living to include "cleaning, shopping, cooking, driving, maintaining a residence, running errands, and caring appropriately for her grooming and hygiene." Tr. at 16 (citations omitted).  The undersigned finds persuasive Plaintiff's argument that the ALJ's reliance on Plaintiff's daily activities is misplaced given the focus of Plaintiff's complaints is her inability to work because of deficiencies in concentration, persistence or pace.  This is particularly true given that the ALJ concluded that Plaintiff was capable of performing her past relevant work as an accounts payable clerk.  See Tr. at 21.  Plaintiff described her duties as an account specialist as follows: "balanced daily cash reports, [r]esolved reject payments from the bank, [p]rocessed manual check[s], answered vendor calls[, r]esearched missing or misapplied [p]ayments[, and p]repared manual checks."  Tr. at 179.  The VE testified that an accounts payable clerk position is skilled with a specific vocational preparation level (SVP) of 5.  Tr. at 52.

The ALJ also discussed Plaintiff's concentration, persistence, and pace in his step two finding and concluded Plaintiff is only mildly limited.  Tr. at 16.  The ALJ based this finding on the facts that Plaintiff does "[word] search puzzles, solitaire, and number placement puzzles (Sudoku) . . . use[s] the internet for e-mail, Facebook, online banking, and research . . read[s], watch[es] television, and play[s] computer games."  Tr. at 16-17.  The ALJ cited Exhibits 29F/2, 4E/6, and 6E in support.  Tr. at 17.  However, Exhibit 29F was removed from the transcript as it did not pertain to Plaintiff.  Tr. 550-69.  It is also worth noting that when asked by the Social Security Administration how often she does these activities, Plaintiff reported "everyday, as long as my attention holds out."  Tr. at 190.  She went on to explain, "[m]y attention span is very short when it comes to working the word search puzzles, playing the games on the computer, and even watching TV."  Tr. at 190.

-11-

The fourth reason given for discounting Dr. Arora's opinion was that "two reports by Dr. Arora appear to contain inconsistencies." Tr. at 20 (referring to Exhibits 12F and 18F/1-2). As noted by Plaintiff, however, "the ALJ misstates Dr. Arora's finding in Exhibit 18F." Pl.'s Mem. at 21. Regarding Plaintiff's affective disorder, Dr. Arora found Plaintiff has moderate to marked limitations in concentration, persistence and pace, not merely moderate limitations as stated by the ALJ in his Decision. Compare Tr. at 472, with Tr. at 20. The ALJ's reason in this regard is therefore inaccurate and unsupported.

In sum, the undersigned finds that the ALJ's reasons for discounting Dr. Arora's opinions are not supported by substantial evidence.

## V.  Conclusion

Upon due consideration, it is

**RECOMMENDED**:

1.   That the Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

- (A) Reevaluate Dr. Arora's opinion; if the opinion is discounted, provide specific reasons, supported by substantial evidence, for discounting it;
- (B) Address the other issues raised by Plaintiff in this appeal in light of the court's findings; and
- (C) Take such other action as may be necessary to resolve these claims properly.

2.   That the Clerk be further directed to close the file.

3.	That the Court include in an Order disposing of this appeal a direction that if benefits are awarded on remand and Plaintiff's counsel deems it appropriate to move for § 406(b) fees, such an application should be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on March 14, 2016.

                                                                            James R. Klindt
                                                                            **JAMES R. KLINDT**
                                                                            United States Magistrate Judge

jde
copies:
counsel of record